PEARSON, J.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION


JUANA STEWART,

      Plaintiff,

      v.

STEWARD TRUMBULL MEMORIAL
HOSPITAL, INC., *et al.*

      Defendants.

CASE NO. 4:18-CV-1154


JUDGE BENITA Y. PEARSON



**MEMORANDUM OPINION AND
ORDER** [Resolving ECF Nos. 44, 45 ]


Pending are two motions for summary judgment, one by Defendant Steward Trumbull

Memorial Hospital, Inc (the "Hospital") (ECF No. 44) and the other by Defendants Ohio Council

8, American Federation of State, County and Municipal Employees, AFL-CIO ("OC8") and

Local 2804, American Federation of State, County and Municipal Employees, AFL-CIO ("Local

2804") (ECF No. 45). Additionally, Local 2804 moves to dismiss for failure to state a claim.

ECF No. 45. The matters have been fully briefed. *See* ECF Nos. 51, 52, 53, 54.

Against the Hospital, Plaintiff advances claims of wrongful termination in violation of the

Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 634, and the Collective

Bargaining Agreement, ECF No. 1-1; *see* 29 U.S.C. § 185. Against OC8 and Local 2804,

Plaintiff alleges a breach of the duty of fair representation, 29 U.S.C. § 158(b).

For the reasons set forth below, Local 2804 is dismissed from the litigation, and the

remaining Defendants' motions for summary judgment are granted.

## I. Background

Plaintiff was employed by the Hospital for about 25 years until her discharge on July 7, 2017.  ECF No. 43 at PageID#: 633.  Plaintiff was at or near the top of her pay grade and earned the maximum, or close to the maximum, that a nurse in her position could make.  ECF No. 43-3 at PageID#: 813-15; *see* ECF No. 51-1 at PageID#: 1253.

Plaintiff was party to a collective bargaining agreement between the Hospital and the Unions (OC8 and AFSCME Local 2026),[1] effective from May 31, 2016, until September 30, 2019.  ECF No. 43-3 at PageID#: 745.  The CBA explicitly incorporates the Hospital's Substance Testing and Fitness Policy.  ECF No. 1-1 at PageID#: 95.  That Policy specifies a random drug testing procedure.  ECF No. 43-2 at PageID#: 699-702.  Section 11.0 of the Policy ("Employee Voluntary Advance Disclosure Option") provides that, "on a one time basis, a post introductory period employee may choose to disclose the use of any Substance that may result in a positive test result."  *Id*. at PageID#: 702.  To exercise this option, the employee must disclose the relevant substance *before* a drug-test urine specimen is taken.  *Id.*

If an employee tests positive for a controlled substance without a prescription and does not provide advance disclosure, the employee "shall be separated immediately" from employment and is ineligible for rehire.  *Id*. at PageID#: 704.  Even in the event an employee exercises the option to disclose a substance in advance, she may still be "immediately separated"

---

[1] Plaintiff was represented by Local 2026, not Local 2804.  As discussed below, Local 2804 was incorrectly named in the Complaint, and Plaintiff has not moved to amend her pleading.

from employment, but separation is not mandatory. *Id*. If an employee who discloses a controlled substance and tests positive remains employed, the employee must take rehabilitative steps at the employer's discretion. *Id*. at PageID#: 704-05.

Employment actions taken according to the Substance Testing and Fitness Policy are subject to the CBA's four-step grievance procedure. ECF No. 1-1 at PageID#: 95. Discharge grievances advance immediately to Step Three of the grievance procedure. ECF No. 49 at PageID#: 1188. At Step Three, a meeting is held between the Hospital's Human Resources Director and a Union Representative to address the grievance. ECF No. 1-1 at PageID#: 24. If, after Step Three, the grievance is not "satisfactorily resolved," Local 2026 refers the grievance to OC8 for review of the merits. ECF No. 45-3 at PageID#: 1055. If OC8 finds the grievance meritorious, it pursues arbitration on the employee's behalf. *Id*. If OC8 declines arbitration, then Local 2026 may choose to withdraw the grievance or proceed to arbitration on its own. *Id*.

On June 5, 2017, the Director of Nursing Services, Charlotte Matash was advised which five employees had been selected for random testing for the month. ECF No. 44-2 at PageID#: 904. On June 21, about two or three hours after beginning her shift, Plaintiff ingested one of her husband's hydrocodone pills.[2] ECF No. 41 at PageID#: 399. Several hours later, Nurse Manager Judy Antonchak notified Plaintiff that she had been selected for random drug testing and Plaintiff was escorted to the drug testing location. ECF No. 44-2 PageID#: 905. Prior to giving a urine sample, Plaintiff signed relevant papers, including the Voluntary Advance Disclosure Option

---

[2] Plaintiff has had a valid prescription for Oxycodone since 2013. ECF No. 41 at PageID#: 372-74. Her husband had a prescription for Hydrocodone. *Id*. at PageID#: 383.

form (Form 26), but she did not disclose that she had taken a hydrocodone pill.  ECF No. 51-1 at PageID# 1256; ECF No. 43-4 at Page ID#: 854.  Plaintiff says she did not review the paperwork before she signed it.  ECF No. 41 at PageID#: 396.

On June 30, 2017, Robert C. Morrow, M.D., a Certified Medical Review Officer, examined the results of the drug test and identified a positive result for opiates, specifically hydrocodone and oxycodone.  ECF No. 44-2 at PageID#: 905.  About a week later, Janelle Jaworski, M.D., another Certified Medical Review Officer, verified a positive result for the opiate hydrocodone and reported a negative result for oxycodone because Plaintiff had a valid prescription.  *Id*.

On July 7, 2017, Plaintiff's employment was terminated.  The Hospital notified Plaintiff of her discharge in the presence of the Union president, Tom Connelly, for violating the Substance Testing and Fitness Policy with a positive drug test.  ECF No. 44-2 at PageID#: 905; ECF No. 51-1 at PageID#: 1257.  The Notice of Discharge was signed by Matash.  ECF No. 43-4 at PageID#: 844.  Plaintiff asked Connelly to grieve the discharge, and Connelly assigned Union Representative Dori Talstein to guide Plaintiff through the grievance process.  ECF No. 45-3 at PageID#: 1045-46; ECF No. 51-1 at PageID#: 1257.

Ten days later, Union Representative Talstein met with Plaintiff, Plaintiff filled out a Grievance Fact Sheet, and Local 2026 filed a grievance on her behalf.  ECF 45-3 at PageID#: 1048, 1058.  After the Step Three meeting, the Hospital denied Plaintiff's grievance and upheld the discharge.  ECF No. 43-4 at PageID#: 847-48.  Thereafter, OC8 and Local 2026 concluded,

"based on review . . . the grievance does not have sufficient merit to warrant an appeal to arbitration." ECF No. 43-4 at PageID#: 849-50.

## II. Standard of Review

Summary judgment is appropriately granted when the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Karnes*, 398 F. 3d 868, 873 (6th Cir. 2005). The moving party is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party must "show that the non-moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial." *Guarino v. Brookfield Twp. Trustees*, 980 F. 2d 399, 403 (6th Cir. 1992).

Once the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of a genuine dispute. An opposing party may not simply rely on its pleadings; rather, it must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox. v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). To defeat the motion, the non-moving party must "show that there is doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment for the movant." *Guarino*, 980 F.2d at 403. In reviewing a motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party when deciding whether a genuine issue of material fact

exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Aickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

"The mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The fact under dispute must be "material," and the dispute itself must be "genuine." A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Scott*, 550 U.S. at 380. In determining whether a factual issue is "genuine," the Court assesses whether the evidence is such that a reasonable jury could find that the non-moving party is entitled to a verdict. *Id*. ("[Summary judgment] will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the non-moving party.").

### III. Law and Analysis

Plaintiff advances three claims    two against the Hospital and one against the Unions.

### A. Claims Against the Hospital

#### 1. Age Discrimination

The ADEA prohibits an employer from discharging an individual "because of such individual's age." 29 U.S.C. § 623(a)(1). "[A] plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for'

cause of the challenged adverse employment action." *Gross v. FBL Financial Servs., Inc.*, 557 U.S. 167, 180 (2009). Employing the *McDonnell Douglas* burden-shifting framework,[3] a plaintiff carries "the initial burden under the statute of establishing a *prima facie* case." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the plaintiff establishes a *prima facie* case, the burden shifts to the employer to refute the initial inference that the adverse employment action was discriminatory. *Id*. at 802-03. Once the employer produces a nondiscriminatory reason for the adverse employment action, the plaintiff must "demonstrate that the proffered reason was not the true reason for the employment decision." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981).

### a. *Prima Facie* Burden

To satisfy her *prima facie* burden, Plaintiff must prove (1) that she was a least 40 years old at the time of the alleged discrimination; (2) she was subjected to an adverse employment action, (3) she was otherwise qualified for the position, and (4) she was replaced by a younger worker or the position remained open and the Hospital continued to seek applicants from persons of Plaintiff's qualifications. *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 521 (6th Cir. 2008) (citing *Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 317 (6th Cir. 2007)); *McDonnell Douglas*, 411 U.S. at 802 (footnote omitted). In this case, the first, second, and fourth elements

---

[3] "*McDonnell Douglas* and subsequent decisions have 'established an allocation of the burden of production and an order for the presentation of proof in . . . discriminatory-treatment cases." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993)).

are undisputed. The Parties dispute only whether Plaintiff was qualified to occupy her position at time of her termination.

The answer, intuitively, is *yes*. Plaintiff worked as a registered nurse at the Hospital for 25 years, and the Hospital points to nothing during the course of her career to suggest that she did not live up to her job description. Rather, the Hospital argues that, by testing positive for a controlled substance without a prescription, Plaintiff disqualified herself from her position. ECF No. 44 at PageID#: 874-77.

Such an argument, however, "improperly conflat[es] the distinct stages of the *McDonnell Douglas* inquiry." *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 661 (6th Cir. 2000). "[W]hen assessing whether a plaintiff has met her employer's legitimate expectations at the *prima facie* stage of a termination case, a court must examine plaintiff's evidence independent of the nondiscriminatory reason 'produced' by the defense as its reason for terminating plaintiff." *Id.* at 660-61. The Hospital will have its opportunity to identify a just motivation for terminating Plaintiff's employment, but it may not do so at the *prima facie* stage. "Rather . . . [courts] look instead at whether an employee met her employer's legitimate expectations prior to the event(s) that sparked the termination, even if the event is as seemingly objective as . . . violating clear rules." *Id.* at 663 n.7.

The Hospital acknowledges *Cline* but urges, in essence, a "hospital exception" or "public safety exception" to its rule. In *Benjamin v. Schuller*, a hospital physician's clinical privileges were revoked when, after thorough review over the course of almost five years, the hospital grievance committee concluded he "[did] not conform to the standards of a University

8

practitioner." 400 F. Supp. 2d 1055, 1061-62 (S.D. Ohio 2005). The district court articulated *Cline*'s rule that "a court must look at a plaintiff's qualifications *before* the unacceptable performance began," *id.* at 1083 (quoting *Cline*, 206 F.3d at 662-63), but it nevertheless concluded that "*Cline*'s analysis is inapplicable in the case of a physician whose hospital privileges were revoked." *Id.* at 1084 (footnote omitted). Explaining further, the court opined, "[T]o apply *Cline* in this case would be to negate the importance of allowing a medical facility to determine what must be done to run most effectively." *Id.* at 1084 n.32.

*Benjamin* can be distinguished on several fronts. First, the court in *Benjamin* paid specific attention to physicians with clinical privileges, not all hospital employees who are responsible for patient care. *Id.* at 1083 ("[I]t is not a court's province to review the merits of the charges against a physician . . . . '[C]ourts generally afford great deference to the decision of the hospital's governing body concerning the granting of hospital privileges.'") (quoting *Yashon v. Hunt*, 825 F.2d 1016, 1022 (6th Cir. 1987)); *id.* at 1084 (a physician's "paper qualifications" do not "confer[ ] an unconditional right to hospital privileges") (quoting *Sosa v. Bd. of Managers of Val Verde Mem'l Hosp.*, 437 F.2d 173, 176 (5th Cir. 2005)). Its conclusion was narrow: "*Cline*'s analysis is inapplicable in the case of a physician whose hospital privileges were revoked." *Id.* at 1084 (footnote omitted).

Additionally, *Cline*'s rule would have been difficult to apply in *Benjamin* as a practical matter. In *Benjamin*, suspicions about the plaintiff's substandard patient care were reported as early as December 1996, but despite consistent, repeated reviews of his performance, his clinical privileges were not revoked until July 2001 (at one location) and April 2002 (at another). *Id.* at

1059-62.  The plaintiff sued in December 2002.  *Id.* at 1063.  Applying *Cline*'s rule to the letter ("a court must look at a plaintiff's qualifications *before* the unacceptable performance began")[4] would have required the court to assess the plaintiff's qualifications from more than six years before the litigation commenced.  Such an assessment would have been difficult to conduct and likely irrelevant to the merits of the plaintiff's case.

In this case, Plaintiff is not a physician, and clinical privileges are not at stake. *Benjamin*'s concern for "great deference" to hospitals is thus not implicated.  *See id.* at 1083 (quoting *Yashon*, 825 F.2d at 1022).  Additionally, unlike in *Benjamin*, assessing Plaintiff's objective qualifications for her position would not require the Court to overlook more than a half decade of her recent job performance.  Whereas the plaintiff in *Benjamin* asked the court to ignore all reports of his performance between 1996 and 2002 at the *prima facie* stage of his case, Plaintiff in this matter asks the Court to look past the results of a single drug test on a single day. There is no practical or theoretical difficulty in applying *Cline*'s rule to Plaintiff's case.

Finally, to whatever extent *Benjamin*'s reasoning, if adopted, would logically apply to this case, the Court is not persuaded that it is consistent with *Cline*.  The court in *Cline* recognized "the surface-level appeal" of addressing a defendant's "objective and neutral" reason for termination at the *prima facie* stage, but it ultimately rejected that order of operations.  206 F.3d at 663 n.7; *see id.* at 662-64.  It acknowledged, for example, the intuitive logic that a truck driver who loses her driver's license is not "qualified" to persist in her job.  *Id.* at 663 n.7.  But if the

---

[4] *Benjamin*, 400 F. Supp. 2d at 1083 (citing *Cline*, 206 F.3d at 662-63).

employee's "lack of a license comprises defendant's nondiscriminatory reason for firing her, she cannot lose at the *prima facie* stage on that ground, even though she would lose on summary judgment anyway barring evidence showing discrimination." *Id.* *Cline* shows no disregard for public safety, nor does it foreclose judicial deference to an employer's expertise. It simply points out that those considerations can be accounted for at the rebuttal stage (the "pretext stage") of the *McDonnell Douglas* inquiry. Plaintiff is entitled to "an adequate 'opportunity to demonstrate that the proffered reason was not the true reason for the employment decision.'" *Id.* at 662 (quoting *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716 n.5 (1983)).

Gauging by the "minimum objective criteria required for employment in the relevant field," *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 575-76 (6th Cir. 2003), and ignoring the results of Plaintiff's random drug test, Plaintiff was manifestly qualified for her position. She has satisfied her *prima facie* burden under the *McDonnell Douglas* inquiry.

### b. Pretext

The Hospital insists that Plaintiff's positive result for a controlled substance without a prescription was a legitimate, nondiscriminatory reason for termination. ECF No. 44 at PageID#: 877-80. In rebuttal, Plaintiff urges that reasoning is pretextual.

Plaintiff tested positive for hydrocodone on the job even though she had no prescription for it. ECF No. 44-2 at PageID#: 905. She admits that she ingested hydrocodone at work without a prescription. ECF No. 41 at PageID#: 399. She did not disclose that she had taken any medication, either informally to a supervisor or coworker or when explicitly given the opportunity to make such a disclosure prior to giving a urine specimen. *Id.* at PageID#: 396, 399.

A Hospital employee who tests positive for a prohibited substance without making an advance disclosure "shall be separated immediately" and "is ineligible for rehire." ECF No. 43-2 at PageID#: 704.

Plaintiff purports to identify a similarly situated, younger coworker ("Jen") who habitually consumed a prohibited substance but was not terminated. ECF No. 51 at PageID#: 1242; ECF No. 41 at PageID#: 406-07. But Plaintiff displays no personal knowledge about Jen. ECF No. 41 at PageID#: 406 ("All I know is her name was like Jen I believe.") Based on her deposition testimony, Plaintiff appears never to have met Jen, and all she knows about Jen she learned by "[t]alking to other coworkers." *Id.* at PageID#: 407. When asked whether Jen had taken a random drug test, Plaintiff replied, "I would imagine they finally found out, but, yeah, I don't know." *Id.* Asked about her understanding of Jen's circumstances, Plaintiff answered, "[S]he was able to get rehab and come back." *Id.* at PageID#: 406.

Plaintiff's evidence concerning Jen would be inadmissible at trial because it is not based on personal knowledge. Fed. R. Evid. 602; *see* Fed. R. Civ. P. 56(c). But even if evidence about Jen were admissible, it would not place a material fact in dispute because it does not tend to show that Jen was situated similarly to Plaintiff. According to the CBA (which may or may not have been in effect when Jen was employed at the Hospital), an employee who gives notice of her drug consumption "prior to the sample being taken . . . *may* be immediately separated. If the employee is allowed to continue employment, the employee will be required . . . to obtain rehabilitation treatment . . . ." ECF No. 43-2 at PageID#: 704-05 (emphasis added). Plaintiff does not know whether Jen disclosed a controlled substance in advance of a random drug test.

*See* ECF No. 41 at PageID#: 406-07.  Plaintiff does not know whether Jen took a random drug test at all.  *Id.* at PageID#: 407.  Plaintiff cannot dispute whether Jen was similarly situated to her because she produces no witnesses that can testify about Jen.

In short, Plaintiff does not deny that she was treated precisely in accordance with the terms of the CBA Substance Testing and Fitness Policy, and she does not produce an example of another employee who was treated differently.  By contrast, it is undisputed that, between 2015 and 2017, the Hospital discharged four other employees "for testing positive for controlled substances without a valid legal prescription and without providing voluntary advanced [*sic*] disclosure . . . ."  ECF No. 44-1 at PageID#: 887.  Two such employees were over 40 and two were under 40.  *Id.*

The Hospital's Substance Testing and Fitness Policy is clear, and the Hospital adhered strictly to the Policy for employees both over and under age 40.  Plaintiff's positive result for a prohibited substance mandated her immediate termination regardless of her age.  In light of that undisputed evidence, Plaintiff cannot show that her "age was the 'but-for' cause" of her termination.  *Gross*, 557 U.S. at 180.  Plaintiff's suggests that (1) her supervisor, at some uncertain point in the past, made an offensive, age-related comment, ECF No. 51-1 at PageID#: 1255-56 ("Why don't you just retire?"), and that (2) in recent years, Plaintiff was sometimes reprimanded more harshly than younger employees for similar conduct.  *Id.* at PageID#: 1253-55 (several disciplinary incidents).  But Plaintiff's evidence, even if fully credited, suggests at most "that age was one motivating factor" in the Hospital's decision to terminate her employment.

*Gross*, 557 U.S. at 180.  As a matter of law, such a showing is insufficient to support Plaintiff's

claim.  *Id.* (requiring a showing of "but-for" causation).

Plaintiff's claim of age discrimination presents no genuine dispute of material fact, and

the Hospital is entitled to judgment on the claim.

### 2. Hospital: Violation of the CBA

Plaintiff also alleges that the Hospital violated the CBA when it terminated her

employment.  She argues that, although she declined to make advance disclosure of the

prohibited substance she had consumed, her failure to do so should not be treated as a "waiver"

of her "right" to make such a disclosure.  ECF No. 51 at PageID#: 1245-46.  She asserts she was

never made aware of her opportunity to disclose the substance she had taken, and "waiver cannot

be established by a consent given under a mistake or misapprehension of fact."  *Id.* at PageID#:

1245; *see* 28 Am. Jur. 2d, *Estoppel and Waiver*, § 192 (May 2019 Update)).

Plaintiff's opportunity to make advance disclosure is not described in the Substance

Testing and Fitness Policy as a "right," but rather an "option."  ECF No. 43-2 at PageID#: 702-

03.  Advance disclosure would have guaranteed nothing; at most, it would have strengthened

Plaintiff's argument that termination was unnecessary or inappropriate, but it would not have

guaranteed her retention.  *Id.* at PageID#: 704-05; ECF No. 49 at PageID#: 1169-71.  It is

difficult to speak in terms of "waiver," therefore, because there is seemingly no "right" at issue.

Plaintiff declined to exercise an option at her disposal that *might* have made it possible to stay on

as a Hospital employee.

Even if the advance disclosure option is construed as a "right," however, Plaintiff waived it. As a general matter, it is true that waiver does not occur based on "mistake or misapprehension of fact." But even in the absence of actual knowledge, a right can be waived if a person has "constructive knowledge" that her right exists and she actually intends to relinquish it. *Weaver v. Weaver*, 522 N.E.2d 574, 576 (Ohio Ct. App. 1987). In this case, Plaintiff insists she did not have actual knowledge of her right to make advance disclosure, but she does not show that she lacked constructive knowledge of such a right. Constructive knowledge of a given thing exists when a person "should have discovered it through the exercise of reasonable diligence." *Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 388 (6th Cir. 2016) (citation omitted).

Plaintiff confirms that she received a copy of the Hospital's Substance Testing and Fitness Policy during her employment. *Id.* at PageID#: 339. Plaintiff also agrees that she was given the two-page advance disclosure form immediately before her urine sample was taken. ECF No. 41 at PageID#: 396-97. Asked whether she read that form, she stated, "I just read the one about   I glanced at it, saw something odd about the name of a medication." *Id.* at PageID#: 396. Asked why she chose not to read the papers she was asked to sign, she said, "Because I was   I wasn't   didn't know there was something else for me to read. She just told me to sign so I could do the drug test." *Id.* at PageID#: 397. "[I]t is axiomatic that 'a person of ordinary mind cannot be heard to say that he was misled into signing a paper which was different that what he intended, when he could have known the truth by merely looking when he signed.'" *Spectrum Networks, Inc. v. Plus Realty*, 878 N.E.2d 1122, 1125 (Ohio Ct. App. 2007) (quoting

*McAdams v. McAdams*, 88 N.E. 542, 544 (Ohio 1909)).  Indisputably, reasonable diligence would have revealed Plaintiff's opportunity to disclose, in advance of her drug test, whether she had consumed a prohibited substance.  Plaintiff declined to exercise reasonable diligence.  Such an omission is waiver.

Plaintiff's claim that the Hospital violated the CBA presents no genuine dispute of material fact, and the Hospital is entitled to judgment on the claim.

### B.  Claims Against the Unions

#### 1.  Local 2804: Motion to Dismiss

Local 2804 asserts that it is not a correctly named defendant and, accordingly, it moves the Court to dismiss the count against it for failure to state a claim on which relief can be granted. ECF No. 45 at PageID#: 1011-12.  Local 2804 represents custodial and maintenance workers at the Hospital; it does not represent registered nurses and it has never represented Plaintiff.  Rather, Local 2026 represents registered nurses at the Hospital (including Plaintiff), and Local 2026 filed the grievance at issue in this action.  ECF No. 43 at PageID#: 631-32.  Despite being made aware of her mistake, Plaintiff did not move to amend her pleading.  ECF No. 52 at PageID#: 1260 n.1. Plaintiff admits that she has failed to state a claim against Local 2804 and that she has made no effort to cure that failure.  *Id.*  Accordingly, Local 2804's motion to dismiss is granted.

#### 2.  OC8: Breach of Duty to Fairly Represent

Finally, Plaintiff claims that OC8 breached its duty to fairly represent her because it "arbitrarily ignore[d] a meritorious grievance or processes[ed] it in [a] perfunctory fashion." *Int'l*

*Broth. of Elec. Workers v. Foust*, 442 U.S. 42, 47 (1979) (quoting *Vaca v. Sipes*, 386 U.S. 171, 190-91 (1967)).  But a claim against a union for breach of duty to represent depends necessarily on an employer's violation of the relevant bargaining agreement.  *DelCostello v. Int'l Broth. of Teamsters*, 462 U.S. 151, 164-65 (1983); *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 630 (6th Cir. 2009) ("Liability attaches to neither employer nor union unless fault can be proved as to both.") (citation and footnote omitted).

Because the Court concludes that there is no genuine dispute that the Hospital did not breach the CBA in this case, OC8 cannot be liable as a matter of law.  Accordingly, OC8 is entitled to judgment in its favor.

## IV.  Conclusion

For the reasons stated herein, Local 2804 is dismissed from the litigation, and the remaining Defendants' motions for summary judgment (ECF Nos. 44, 45) are granted.  A judgment entry shall issue.

IT IS SO ORDERED.

__ July 25, 2019 __         __ /s/ Benita Y. Pearson __
Date                Benita Y. Pearson
                           United States District Judge